## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NELSON VALLE, BRUNILDA VALLECASTRO,<br>        Plaintiffs,<br><br>        v.<br><br>BENDETT & MCHUGH, P.C., et al.,<br>        Defendants. | No. 3:14-cv-1796 (SRU) |

## RULING AND ORDER

*Pro se* plaintiffs Nelson Valle and Brunilda ValleCastro filed their complaint alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, the

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, *et seq.*, and

the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against defendants Bendett

& McHugh, P.C. ("Bendett"), Green Tree Servicing, L.L.C. ("Green Tree"), Jane Hamilton

Torcia, Joann Floyd, Adam L. Avallone, William R. Milne, Gerald A. Gordon, Barbara M.

Riordan, Stacy R. Chapman, Lauren Jowers, Michelle Red Bear, and Allison Ireland. Defendants

Bendett, Torcia, Floyd, Avallone, Milne, Gordon, Riordon, and Chapman (collectively, the

"Bendett defendants") and defendants Green Tree, Jowers, Red Bear and Ireland (collectively,

the "Green Tree defendants") moved separately to dismiss much of the complaint for failure to

state a claim upon which relief can be granted, and to dismiss Valle's claims for lack of standing

(docs. 52 and 56). Both groups of defendants also requested that I take judicial notice of a state-

court lawsuit to collect on the debt at issue in this case (docs. 52 and 65). The plaintiffs

responded to both motions to dismiss in a single opposition (doc. 61). The plaintiffs also

requested that I take judicial notice of several additional facts (doc. 60), to which both sets of

defendants objected (docs. 68 and 69).

For the following reasons, the Bendett defendants' motion to dismiss (doc. 52) is GRANTED, and the Green Tree defendants' motion to dismiss (doc. 56) is GRANTED.  Both sets of defendants' motions for judicial notice (doc. 52 and 65) are GRANTED. The plaintiffs' motion for judicial notice (doc. 60) is DENIED.

## I.    Background

*Pro se* plaintiffs Nelson Valle and Brunilda ValleCastro bring their complaint against the Green Tree and Bendett defendants, alleging violations of the FDCPA requirements regarding harassment or abuse, 15 U.S.C. § 1692d, Compl. ¶ 12.13; false or misleading representations, 15 U.S.C. § 1692e, Compl. ¶¶ 8.3, 9.2, 9.9, 9.11, 9.12, 9.16, 9.17, 10.4, 10.5, 10.7, 10.8, 11.13; unfair practices, 15 U.S.C. § 1692f, Compl. ¶¶ 9.11, 9.12, 9.16, 10.4, 10.7, 11.3, 12.13; and validation of debts, 15 U.S.C. § 1692g, Compl. ¶¶ 8.3,.10.6, 10.8; corresponding violations of CUTPA, Conn. Gen. Stat. § 42-110a, *et seq*, Compl. ¶13.6; and violations of the TCPA's prohibition on certain uses of automated telephone equipment, 47 U.S.C. § 227(b)(1)(a)(iii), Compl. ¶ 14.13.[1]

The debt at issue relates to a promissory note signed by ValleCastro and originally owned by Countrywide Home Loans, Inc. and a related mortgage naming Mortgage Electronic Registration Systems, Inc. as the nominee for Countrywide. Green Tree Defs.' Mot. Dismiss Br. 3, Exs. A and B. Bendett is a law firm engaged in debt collection, and Torcia, Avallone, Milne, Gordon, Riordan, and Chapman appear to be employees of Bendett. Compl. ¶¶ 4.4– 4.11.  Green Tree is the current servicer on the loan, and Jowers, Red Bear, and Ireland appear to be employees of Green Tree. Compl. ¶¶ 4.3, 4.12– 4.14.

---

[1] Because neither set of defendants moves to dismiss the TCPA claim at this time, the facts underlying that claim will not be discussed in detail here.

On or around September 13, 2007, Countrywide informed ValleCastro that the mortgage loan was in default. Compl. ¶ 7.2. On or about October 17, 2011, the mortgage was assigned to the Bank of New York Mellon as trustee for certificate-holders of the CWABS, Inc. Asset-Backed Certificates Series 2005-4 (the "Trust"), and the assignment was recorded. Compl. ¶ 7.3. ValleCastro states that she sent a letter requesting verification of the debt to the Bank of New York Mellon on or about November 12, 2011, and received no response. Compl. ¶¶ 7.4–7.5.

In a letter dated October 1, 2012, Green Tree submitted a letter to ValleCastro in which it identified itself as the "new servicer" on the account and complied with the form obligations of 15 U.S.C. § 1692g(a).[2] Compl. ¶ 7.6; Green Tree Defs.' Mot. Dismiss Br. Ex. D; *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (Notice must include "the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests."). On October 18, 2012, ValleCastro sent a letter to Green Tree disputing the debt, asserting that she was unsure about the legal status or owner of the debt. Compl. ¶ 7.7; Green Tree Defs.' Mot. Dismiss Br. Ex. E. On November 9, 2012, Green Tree responded with a letter identifying the Bank of New York Mellon as the trustee for the Trust that owned the debt, stating that servicing had been transferred from BAC

---

[2] The complaint states that on September 27, 2012, ValleCastro received a communication with substantially similar content, including identical language, to the Green Tree defendants' Exhibit D, which is dated October 1, 2011. The two accounts differ with respect to the creditor identified in the communication—the plaintiffs state that Green Tree represented that it was collecting on behalf of the Bank of New York, while the defendants' exhibit indicates that the creditor was CWABS, Inc. Asset-Backed Certificates Trust 2005-4. Because the plaintiffs do not dispute that the Bank of New York was the trustee for that Trust, that distinction does not appear to be material. Accordingly, given that the parties seem to agree that a communication containing the relevant content was sent from Green Tree to ValleCastro in late September or early October, and that the exact date of the communication is immaterial for the purposes of this Ruling, I will refer to that set of communications by the date provided on the Green Tree defendants' exhibit.

3

Home Loans Servicing, LP, a subsidiary of Bank of America,[3] to Green Tree on September 16, 2012, and enclosing a copy of the original promissory note, a credit reference inquiry, and a payment history on the loan.[4] Compl. ¶¶ 7.8–7.9; Green Tree Defs.' Mot. Dismiss Br. Ex. F.

On February 28, 2013, Green Tree submitted a letter informing ValleCastro that its records showed that she did not have insurance on her property, as required by the mortgage agreement. Compl. ¶ 7.12, Ex. A. Green Tree's letter warned ValleCastro that if she did not show evidence of proper insurance within 15 days of the date of the letter, it would "exercise [its] right under the terms of [her] credit agreement to purchase insurance coverage on the collateral securing [her] account." *Id.* ValleCastro asserts that Green Tree subsequently changed the insurance on her home at some point between March 16, 2013 through April 4, 2013. Compl. ¶ 7.13. The plaintiffs then paid the mandatory premium. Compl. ¶ 7.15. On November 12, 2014, Green Tree notified the plaintiffs that the insurance was being cancelled. Compl. ¶ 7.39.

On July 23, 2014, the Bank of New York Mellon on behalf of the Trust (the "state court plaintiff"), represented by Bendett, filed an action to foreclose on the mortgage in Connecticut Superior Court. Compl. ¶ 7.21. Torcia signed the summons and complaint as an attorney for Bendett. Compl. ¶ 7.23; Bendett Defs.' Mot. Dismiss Br. 2. Floyd's name appeared on the summons as "Person recognized to prosecute in the amount of $250.00." Bendett Defs.' Mot. Dismiss Br. 2. On July 27, 2014, the state court plaintiff submitted an affidavit executed by Red Bear as a foreclosure specialist for Green Tree. Green Tree Defs.' Mot. Dismiss Br. Ex. H. Red Bear's affidavit stated that Red Bear was "familiar with the business records and procedures of

[3] The complaint asserts that on November 9, 2012, ValleCastro received a letter from Green Tree stating that it was servicing "on behalf of Bank of America settlement." Compl. ¶ 7.8. There are substantial similarities between the letter that the plaintiffs describe and the November 9, 2012 letter attached as Exhibit F to the Green Tree Defendants' motion to dismiss, which states that Green Tree had taken over servicing *from* Bank of America. Because the plaintiffs do not otherwise assert that Bank of America was an owner of ValleCastro's mortgage loan or provide any support for that contention, and moreover, because none of their claims rely on such an assertion, I assume that both of the parties are referring to the letter provided as the Green Tree defendants' Exhibit F.
[4] ValleCastro denies receiving the dated payment history. Pls.' Opp'n Br. 22 n.104.

Green Tree Servicing LLC" and that "[t]he loan is not owned or guaranteed by a Government Sponsored Enterprise (GSE), is not guaranteed or insured by any federal agency, and is not serviced by a lender participating in the federal Making Home Affordable Program." *Id.* The affidavit was notarized by "Allison Sturis," who the plaintiffs assert has subsequently changed her name to Ireland. *Id.*; Compl. ¶ 4.14(h) n.15.

On or about September 2 and 9, 2014, the plaintiffs state that the Bank of New York Mellon informed them that it did not own the loan in question, and that Green Tree was not the servicer of the debt. Compl. ¶ 7.31. On the basis of that communication, ValleCastro filed a motion to dismiss the state court action for lack of standing on September 19, 2014. Compl. ¶ 7.34. Avallon, an attorney with Bendett, acting on behalf of the state court plaintiff, filed an objection to that motion. Bendett Defs.' Mot. Dismiss Br. 4. The objection was accompanied by an affidavit executed by Jowers as a "Foreclosure Specialist" for Green Tree, stating that the Bank was entitled to enforce the note and mortgage, that they were in default, and that $146,759.01 was owed on the note. Green Tree Defs.' Mot. Dismiss Br. Ex. I. Pursuant to Connecticut procedure, Chapman, another Bendett employee, subsequently notified ValleCastro that there would be a hearing on her motion to dismiss. Bendett Defs.' Mot. Dismiss Br. 4. ValleCastro's motion was denied on December 10, 2014. Bendett Defs.' Mot. Dismiss Br. 4.

While the state court action was proceeding, ValleCastro also exchanged correspondence with Bendett regarding the validity of the debt. On July 25, 2014, the plaintiffs submitted a letter to Torcia and Floyd requesting validation of the debt and asserting that the debt was "disputed in its entirety." Compl. Ex. B. On August 11, 2014, they sent a second letter to Bendett requesting validation of the debt. Compl. ¶ 7.30. On October 13, 2014, Avallone and Milne, acting for Bendett on behalf of the state court plaintiff, submitted a response, including the name and

address of the original creditor, the name of the Trust as the current creditor, and enclosed a payoff statement with a break-down of charges owed on the account, as well as a copy of the original note and mortgage. Compl. Ex. D.

On October 29, 2014, Riordan, a paralegal at Bendett, executed an affidavit of compliance with the Emergency Mortgage Assistance Program as required under Connecticut law, stating that "no mortgagor submitted an application for assistance to CHFA pursuant to Connecticut General Statutes Section 8-265ee within the 60 day period after said notice was given." Bendett Defs.' Mot. Dismiss Br. Ex. D. Avallone then acting in the capacity of Commissioner of the Superior Court, witnessed the affidavit, and Gordon, in the same capacity, certified that it had been sent to ValleCastro, as required by Connecticut practice rules. *Id.*

Plaintiffs filed this action on December 1, 2014.

## II.     The Defendants' Rule 12(b)(1) Motions to Dismiss Valle for Lack of Standing

### A.   Standard of Review

The party who seeks to invoke a court's jurisdiction bears the burden of establishing that jurisdiction. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (*citing Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To survive a motion brought under Rule 12(b)(1), a plaintiff must allege facts demonstrating that the plaintiff is a proper party to seek judicial resolution of the dispute. *Id.*

### B.   Discussion

Both sets of defendants move to dismiss Valle's claims under counts one through six[5] under Rule 12(b)(1) for lack of standing.

---

[5] Count Seven only asserts claims against Green Tree. In its brief, Green Tree states that it "does not seek dismissal of Count VII at this time," which statement presumably applies to both their Rule 12(b)(1) and Rule 12(b)(6) motions. Green Tree Defs.' Mot. Dismiss Br. 1 n.1.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982). That limitation has been interpreted to require that a plaintiff seeking to maintain an action in federal court must have "standing" to do so. *Id.* Standing, in turn, requires three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical;" (2) "a causal connection between the injury and the conduct complained of;" and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

The FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries creating constitutional standing." *Ehrich v. I.C. Sys., Inc.,* 681 F. Supp. 2d 265, 269 (E.D.N.Y. 2010). In analyzing whether a plaintiff has alleged an injury in fact, courts look to "whether plaintiff suffered a cognizable statutory injury and not whether a plaintiff suffered actual damages." *Id.* "Although some sections of the FDCPA refer specifically to consumers, the civil liability provision[] provides that 'any debt collector who fails to comply with any provision of this subchapter with respect to *any* person is liable to such person . . . .'" *Kinkade v. Estate Info. Servs., LLC*, No. CV 11-4787 (AKT), 2012 WL 4511397, at *3 (E.D.N.Y. Sept. 28, 2012) (quoting 15 U.S.C. § 1692k(a)). Without deciding whether non-consumers could have standing under the FDCPA, the Second Circuit suggested in a summary order that courts could consider the specific provision under which the claim is brought. *Sibersky v. Goldstein*, 155 F. App'x 10, 11 (2d Cir. 2005). The *Sibersky* court's analysis further suggests that non-consumers may have standing to enforce FDCPA provisions not explicitly limited to

7

consumers if they either "stand in the shoes of the consumer" or "allege injurious exposure" to the practice. *Id.* at 12.

Valle makes claims under sections 1692d, –e, –f, and –g, none of which is explicitly restricted to consumers on its face. *See, e.g.*, *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 228 (D. Conn. 2014) (holding that section 1692f standing should not be restricted to consumers); *Kinkade*, 2012 WL 4511397, at *4 (discussing all four of those provisions in light of *Sibersky*).

The defendants argue that because none of their correspondence or collection actions was addressed to or named Valle, and because Valle has not asserted any recognizable legal interest in the mortgage note or the underlying property, he has failed to adequately plead that he has suffered an "injury in fact" as a result of any of the defendants' conduct. Valle responds that he has suffered an injury on at least six grounds: (1) as ValleCastro's son, he stands to inherit the property as a third-party beneficiary; (2) his "fiduciary responsibility" to ValleCastro; (3) the receipt of a summons expressing a "security interest in his property;" (4) his involvement in the insurance scheme; (5) several automated calls made by Green Tree to his cell phone; and (6) emotional and financial distress caused by the defendants' actions. Pls.' Opp. Br. 8–9.

First, Valle has not sufficiently alleged that he is a third-party beneficiary to the mortgage and note. "The Connecticut Supreme Court has explained that 'the ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the [mutual] intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making . . . .'" *Ensign Yachts, Inc.*

8

*v. Arrigoni*, No. 3:09-CV-209 (VLB), 2010 WL 918107, at *10 (D. Conn. Mar. 11, 2010)

(quoting *Pelletier v. Sordoni/Skanska Construction Co.*, 264 Conn. 509, 531 (2003)). Valle's

bare assertion that ValleCastro intends to devise the collateral property to him is insufficient to

show that Countrywide and ValleCastro *both* mutually intended the mortgage to benefit him at

the time that their agreement was made.

Relatedly, although Valle describes his responsibilities to his mother in this dispute in the

legalistic terms of principal / agent and administrator, he has not established that any of those

relationships have been legally recognized. Further, as a non-lawyer, Valle is not permitted to

make arguments on behalf of another person in a legal proceeding. By contrast, several of the

cases on which he relies to argue that standing may be extended to non-consumers involve

legally recognized obligations. *See, e.g.*, *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650

(6th Cir. 1994) (plaintiff was an executrix for the consumer's estate); *Riveria v. MAB

Collections, Inc.*, 682 F. Supp. 174, 176 (W.D.N.Y. 1988) (same). Valle's claims for financial

and emotional distress also appear to be premised on the purported agency relationship and, in

that respect, are also insufficient to confer standing. *See* Compl. Valle Aff. ¶ 8–9.

Valle's argument regarding the summons is similarly unavailing. Valle has failed to

plausibly allege that the communications at issue were addressed to him, or that they otherwise

caused him any "injurious exposure." Instead, as in *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir.

2002), he appears to be improperly claiming injury "merely because [he] read the letter

containing the threat." *Id.* at 130.

Valle has shown, however, that at least one communication regarding the insurance was

addressed to him. *See* Compl. Ex. C (identifying "Nelson Valle" as "Mortgagee / Add. Party").

Accordingly, Valle does have standing to raise any claim related to that communication, and the defendants' Rule 12(b)(1) motions are denied in this narrow regard.[6]

Valle's allegations regarding Green Tree's automated calls to his cell phone provide a stronger, but still insufficient basis for standing. Numerous phone contacts have been found sufficient to constitute "injurious exposure" and thereby confer FDCPA standing in certain circumstances. *See Bank v. Pentagroup Fin., LLC*, No. 08-cv-5293 (JG) (RML), 2009 WL 1606420, at *5 (E.D.N.Y. June 9, 2009); *Doyle v. Midland Credit Mgmt., Inc.,* No. 11–cv–5571, 2012 WL 1666397, at *3 (E.D.N.Y. May 11, 2012). In both of those cases, however, the plaintiff, having no relationship to the debtor, received over 20 calls because the defendant had entered a wrong number, which calls persisted even after the plaintiff had informed the defendant of its error. *Doyle*, 2012 WL 1666397, at *4 (22 to 28 calls); *Bank*, 2009 WL 1606420, at *5 (30 calls). Valle's allegations, taken as true, do not rise to that level of abuse. In the complaint, Valle alleges receiving eight calls on his cell phone over the course of three months. Compl. ¶ 14.5. Although he answered that number, he does not allege that the calls were actually addressed to him rather than his mother, or that he made any effort to inform Green Tree that they were calling him instead of his mother. Accordingly, the calls are not sufficiently injurious to confer FDCPA standing.

Although the parties have not specifically discussed the issue in in their briefing, Valle's standing under CUTPA is also implicated by the defendants' Rule 12(b)(1) motions.[7] "The Connecticut courts apply 'traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA.'" *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 231 (D. Conn. 2014) (quoting *Conn. Pediatric*

---

[6] Valle's claims regarding the mandatory insurance are, however, dismissed under Rule 12(b)(6), as discussed *infra*.
[7] The court may address the issue of standing sua sponte in any case. *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 232 (D. Conn. 2014).

*Med. Ass'n v. Health Net of Conn., Inc.,* 302 Conn. 464, 28 A.3d 958, 962 (2011)). "[S]tanding under CUTPA requires that the plaintiff have some sort of business relationship with the defendant business such that he suffers injury as either a consumer or competitor of the defendant or as some other businessperson affected by its unfair or deceptive acts." *Id.* (citations and internal quotation marks omitted).

Because Valle clearly does not fall into any of the categories required for standing under CUTPA (consumer, competitor, or otherwise injured businessperson), his CUTPA claim is also dismissed for lack of standing.

In sum, the defendants' Rule 12(b)(1) motions to dismiss Valle are granted in all respects, except his claims premised on the mandatory insurance.

III.    **The Defendants' Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim**

A.    Standard of Review

Where one party proceeds *pro se*, the court reads that party's pleadings liberally and interprets them "to raise the strongest arguments that they suggest." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). Despite this obligation, a complaint must include sufficient factual allegations that, "accepted as true, [ ] state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

11

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Iqbal*, 556 U.S. at 678–79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

B.  Discussion

ValleCastro raises claims under the FDCPA, CUTPA, and, along with Valle, under the TCPA. The defendants move to dismiss only the FDCPA and CUTPA claims. To focus this discussion, I will begin by dismissing the claims under Count Five of the complaint, which are obviously inadequate. I will then consider the claims against Green Tree and Bendett as entities, followed by any remaining FDCPA claims asserted personally against individual defendants. Finally, I will consider ValleCastro's CUTPA claims.

1.  *The Plaintiffs' Claims under the FDCPA Related to the Imposition of Insurance*
    *(Count V)*

The plaintiffs assert that Green Tree impermissibly forced them to pay for insurance on ValleCastro's property, which actions constituted state law identity theft and thereby violated sections 1692d and –f. Compl. ¶¶ 12.17–12.20.

Green Tree argues that: (1) mandatory procurement of insurance is not a debt collection activity, Green Tree Defs.' Mot. Dismiss Br. 11; (2) the mortgage expressly permitted Green Tree, as the representative of the owner of the debt, to acquire insurance on the property at ValleCastro's expense, Green Tree Defs.' Mot. Dismiss Br. 12; and (3) these claims are barred by the FDCPA's one-year statute of limitations, as the initiation of the alleged conduct took place between February and April of 2013. Green Tree Defs.' Reply Br. 8. I note that the last argument is clearly inapposite, because the plaintiffs allege that the mandatory insurance continued through November 12, 2014. Compl. ¶ 7.39.

Without deciding whether the imposition of insurance is a debt collection practice under the FDCPA, I agree with Green Tree that the maintenance of insurance is clearly contemplated by the mortgage agreement, which states that: "Borrower shall keep the improvements now existing or hereafter erected on the Property insured . . . . If the Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense." Green Tree Defs.' Mot. Dismiss Br. Ex. B (mortgage deed, section 5). There is thus no plausible argument that Green Tree's imposition of insurance constituted a violation of the FDCPA, and accordingly, the plaintiffs' claims under Count Five are dismissed with prejudice. Because Valle has no standing to bring the remaining claims, he will not be addressed further in this Ruling.

2. *ValleCastro's Claims against Bendett under the FDCPA Related to the Assignment of the Mortgage (Count V)*

ValleCastro alleges that on October 17, 2011, Bendett violated state law and the FDCPA when it "requested an instrument form Ventura County California so as to facilitate an alleged but **non-existing transfer** from MERS to [the Bank of New York Mellon] to be evidenced in the public record," with the assistance of Desiree Carson, as the purported notary on the transfer. Compl. ¶¶ 12.4–12.9. In support of that argument, ValleCastro alleges that Carson, who was subsequently convicted on embezzlement charges in 2013 (discussed *supra* with respect to the plaintiffs' motion for judicial notice), was known by Bendett to be a felon at the time of the transfer. Compl. ¶¶ 12.9, 12.13.

ValleCastro has failed to make out a claim for relief on those grounds. Bendett's first direct contact with ValleCastro occurred in July, 23, 2014, as counsel for the state court plaintiff in its foreclosure action. Although the complaint nakedly asserts that Bendett facilitated the assignment of the mortgage in 2011 in furtherance of its illegal state court action with Green Tree three years later, Compl. ¶¶ 7.3–7.19, conclusory allegations are not sufficient to withstand a Rule 12(b)(6) motion. ValleCastro has not made out any plausible basis for her narrative, nor shown any ability to do so. Accordingly, the claims under Count Five are dismissed with prejudice.

3. *ValleCastro's Claims against Bendett and Green Tree under the FDCPA Based on Failures to Validate the Debt (Counts I and III)*

ValleCastro asserts that Bendett and Green Tree committed several FDCPA violations arising out of the Bank of New York and Bendett's failure to adequately validate the debt in accordance with section 1692g(b). First, because the Bank of New York Mellon failed to respond to ValleCastro's November 12, 2011 request for verification of the debt, she alleges that every

attempt made by Green Tree or Bendett to collect on the debt after that point was unlawful under

sections 1692e and –f. Second, ValleCastro alleges that Bendett violated section 1692g(b)

directly by failing to provide an adequate or timely response to her July 25, 2014 request for

verification.[8]

Section 1692g(b) provides that if, within 30 days following a debt collector's "initial

communication with a consumer in connection with the collection of any debt" as defined under

section 1692g(a),

> the consumer notifies the debt collector in writing . . . that the debt,
> or any portion thereof, is disputed, or that the consumer requests
> the name and address of the original creditor, **the debt collector**
> **shall cease collection of the debt, or any disputed portion**
> **thereof, until the debt collector obtains verification of the debt**
> or a copy of a judgment, or the name and address of the original
> creditor, and a copy of such verification or judgment, or name and
> address of the original creditor, is mailed to the consumer by the
> debt collector.

15 U.S.C. § 1692g(b) (emphasis added). District courts in the Second Circuit have repeatedly

held that "verification . . . does not require the debt collector to do anything more than confirm

the amount of the debt and the identity of the creditor, and relay that information to the

consumer." *Ritter v. Cohen & Slamowitz, LLP*, No. 14-CV-5736 ADS ARL, 2015 WL 4523266,

at *6 (E.D.N.Y. July 24, 2015) (quoting *Devine v. Terry*, No. 13–cv–1023, 2014 U.S. Dist.

LEXIS 138938, at *26 (D. Conn. Sept. 30, 2014)); *Blanc v. Palisades Collection, LLP*, No. 06

CIV. 1626 (CLB), 2007 WL 3254381, at *7 (S.D.N.Y. Nov. 1, 2007).

When considering allegations under section 1692g, the Second Circuit has emphasized

that the FDCPA was intended to address "the recurring problem of debt collectors dunning the

wrong person or attempting to collect debts which the consumer has already paid." *Jacobson v.*

---

[8] In her opposition brief, ValleCastro clarifies that Green Tree's response to her verification is not being challenged
under section 1692g(b), but as part of the unauthorized assumption of authority claims discussed below. Pls.' Opp'n
Br. 22.

*Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting S.Rep. No. 95–382, at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1699). Accordingly, some district courts in the Second Circuit have held that each successive debt collector must send a validation notice under section 1692g(a) even if a prior debt collector already sent a notice regarding the same debt. *Tocco v. Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014); *Tipping-Lipshie v. Riddle*, No. CV 99-4646, 2000 WL 33963916, at *3 (E.D.N.Y. Mar. 2, 2000).

With respect to the 2011 validation letter to Bank of New York Mellon, ValleCastro's pleadings are insufficient. Assuming for the sake of argument that the Trust that actually owns the debt can be treated as a debt collector and further that each new debt *owner* must comply anew with the requirements of this section even if retaining the same servicer, ValleCastro has nevertheless failed to identify an "initial communication" pursuant to section 1692g(a) that would allow this court to assess when and whether a violation had taken place. Accordingly, her claims on this basis are dismissed without prejudice to amendment.

With respect to Bendett's 2014 validation letter, ValleCastro has similarly failed to identify an "initial communication" triggering her section 1692g(b) rights. Section 1692g(d), added in 2006, supersedes previous Second Circuit case law holding that the initiation of a lawsuit constitutes an "initial communication" under section 1962g(a). *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 136 (2d Cir. 2010) (discussing *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006)). But that does not mean that *all* litigation conduct is immunized under the FDCPA, or even under section 1692g in particular. *See id.* (holding that section 1692g can be violated when a lawsuit is initiated during the validation period without adequate explanation). In the present case, however, ValleCastro does not allege that Bendett communicated with her in any way prior to filing the suit. And, as Bendett correctly argues, ValleCastro cannot initiate

communications that trigger section 1692g. Bendett Defs.' Mot. Dismiss Br. 17–18; *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 367–68 (D. Conn. 2012) ("FDCPA's protections are not triggered by communications initiated by someone other than the debtor.") (citation omitted).  Accordingly, her claims on that basis are dismissed without prejudice to amendment.

4.  *ValleCastro's Claims under the FDCPA Related to the State Court Action (Counts I, III, IV, and V)*

ValleCastro alleges that Bendett, Green Tree, and their agents violated the FDCPA under multiple provisions arising out of their participation in the state court action on three additional grounds. First, she alleges that the Bank of New York Mellon did not actually authorize Bendett or Green Tree to institute or participate in the state court action, and accordingly each act taken by Bendett, Green Tree, or their agents in that action violates sections 1692e or –f. Second, she alleges that the state court action was unlawful because it was barred by a six-year statute of limitations on the action. Third, she alleges that the defendants violated section 1692e(8) by failing to disclose that the debt was in dispute.

The first two arguments are easily rejected as defenses that were, or should have been, raised in the state court action, and are thus inappropriate subjects for relitigation in this forum.

Valle Castro asserts repeatedly in her complaint that the Bank of New York Mellon informed her that it had no interest in her mortgage loan, and that Green Tree was not the servicer on the loan. Compl. ¶ 7.13. She interprets that to mean that Bendett was not actually authorized by the state court plaintiff to bring suit, and was instead told to do so by Green Tree. Compl. ¶¶ 9.12–9.13. ValleCastro raised the same arguments regarding Bendett with the state court in a motion to dismiss that proceeding for lack of subject matter jurisdiction. *See* Compl. ¶ 7.33; Defendant's Motion to Dismiss, *The Bank of New York Mellon fka The Bank Of New York*

*As Trustee For The Certificateholders Of The CWABS, Inc., Asset-Backed Certificates, Series 2005-4 v. ValleCastro*, No. HHD-cv-146052583-S (Conn. Super. Ct. Sept. 19, 2014). On December 10, 2014, the Connecticut Superior Court denied ValleCastro's motion because she "ha[d] presented no persuasive proof or reason to cause the court to doubt that the plaintiff has standing." *Id.*, Order (Dec. 10, 2014). Invoking the principles of collateral estoppel,[9] I cannot now allow the same claims to be relitigated here.

Green Tree's alleged collusion in the state court case was not squarely addressed in that action. Nevertheless, as Green Tree points out in its brief, it was not actually the entity that filed the state court action, nor are there any non-conclusory allegations that it was involved behind the scenes. Green Tree Defs.' Mot. Dismiss Br. 10–11.

Similarly, ValleCastro's argument that the foreclosure action is barred by a state law statute of limitations is a claim properly raised as a defense to the action. It is unclear whether ValleCastro actually raised that defense in the state court action, but I note that the Green Tree defendants have correctly stated that the relevant statute of limitations runs from either the due date stated in the note or the accelerated due date. Green Tree Defs.' Mot. Dismiss Br. 11 (citing Conn. Gen. Stat. § 42a-3-118a). They further point out that the due date stated in the note is April 1, 2035. *Id.* ValleCastro appears to argue that the Notice of Intent to Accelerate by BAC Home Loans Servicing on September 2, 2009, which stated that the loan would be accelerated on October 2, 2009 if no payments were made, should be treated as evidence that the debt actually was accelerated on that date. Pls.' Opp'n Br. 26. But even with that accelerated due date, the

---

[9] "Federal district courts must apply the preclusion law of the rendering state when determining the preclusive effect of a state court judgment." *Sadler v. Lantz*, No. 3:07-CV-1316 CFD, 2010 WL 3418127, at *2 (D. Conn. Aug. 20, 2010). "Under Connecticut law, to be subject to collateral estoppel, an issue must have been: (1) 'fully and fairly litigated,' (2) 'actually decided,' and (3) 'necessary to the judgment' in the first action, and (4) 'identical' to the issue to be decided in the second action." *Id.* (internal citations and quotation marks omitted). All of those requirements are met in the present case.

initiation of the suit on July 23, 2014 would still fall within the six-year window. Accordingly, all claims based on the defendants' alleged lack of authorization to bring the lawsuit are dismissed with prejudice.

ValleCastro's section 1692e(8) argument here is also unavailing. She argues that the filings in the state court actions were "communications to a person (a state court) wherein all parties were debt collectors," and accordingly, each party was required to state in each communication that the debt was in dispute. Compl. ¶ 9.17.

Section 1692e(8) forbids "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e. That section is "not limited to communications with credit reporting agencies," but also "applies to communications with 'any person.'" *Kinel v. Sherman Acquisition II, LP*, No. 05-cv-3456 (KMW), 2007 WL 2049566, at *1 (S.D.N.Y. July 13, 2007). The Second Circuit has, however, suggested that violations of section 1692e must also be material in order to be enforceable. *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x. 89, 94 (2d Cir. 2012); *see also Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) (discussing *Gabriele* and adopting a materiality standard); *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-cv-1868 (ARR) (VVP), 2014 WL 4843947, at *11 (E.D.N.Y. Sept. 26, 2014) (same). "Statements are material if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt." *Lautman*, 2014 WL 4843947, at *11 (citation omitted).

Assuming *arguendo* that the blanket disputes raised by ValleCastro against the debt were sufficient to trigger section 1692e(8), defendants potentially could have violated section 1692e(8) by failing to communicate that fact to the state court. But such a violation clearly

would not impair ValleCastro's ability to challenge the debt—instead, by making those assertions in the course of litigation, the defendants provided her with a new forum in which to raise her concerns before an impartial decision-maker. Accordingly, ValleCastro's claims on under section 1692e(8) in count two are dismissed with prejudice.

5. *ValleCastro's Claims against Green Tree under the FDCPA Related to Alleged Violations of State Law (Count II)*

ValleCastro alleges that Green Tree violated section 1692e(5) by providing affidavits from parties located in Texas and South Dakota, thereby acting unlawfully under the Connecticut licensing requirements of the Consumer Collections Agencies Act (the "CCAA"), Conn. Gen. Stat. §§ 36a-801, *et seq*.

Section 1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken." The CCAA provides that: "[n]o person shall act within this state as a consumer collection agency unless such person has first obtained a consumer collection agency license . . . ." Conn. Gen. Stat. § 36a-801(a).  It further provides that "[n]o person licensed to act within this state as a consumer collection agency shall do so under any other name or at any other place of business than that named in the license." *Id.* § 36a-801(i).[10]

There is no private right of action under the CCAA. *See* Conn. Gen. Stat. §§ 36a-808; 36a-810; *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 323 (D. Conn. 2009); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414 (D. Conn. 1990) (discussing similar claims under the FDCPA and Conn. Gen. Stat. § 42-127a, predecessor to section 36a-801). Nevertheless, ValleCastro can be understood to argue that Green Tree's failure to obtain appropriate Connecticut licenses renders all of its collection actions in Connecticut unlawful, and

---

[10] In this Count, ValleCastro also raises claims under Conn. Gen. Stat. § 36a-805, and section 1692e(8) of the FDCPA. Because those claims arise from the same unsupported allegations regarding Green Tree's involvement in the state court collection action, they are also dismissed with prejudice.

therefore constitutes a *per se* violation of the FDCPA. Although there is precedent for that argument, some courts have drawn a distinction between material and technical violations. *Compare Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414–15 (D. Conn. 1990) (finding violations under sections 1692e(5), (10), and 1692f where debt collector merely "stat[ed] that it intended to use all means at its disposal to collect"), *with Goins v. JBC & Associates, P.C.*, 352 F. Supp. 2d 262, 271–72 (D. Conn. 2005) (finding 1692e(5) violation because the communication constituted an "unequivocal threat to take action")*, and Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 209 (E.D.N.Y. 2009), *as amended* (Dec. 4, 2009) (finding no violation where the communication at issue could not "be construed as a threat to litigate"). I find the latter approach persuasive.

ValleCastro concedes that Green Tree obtained appropriate licenses for locations in Painesville, Ohio and Tempe, Arizona. Compl. ¶ 9.7. She argues that Green Tree nevertheless violated the CCAA by submitting affidavits signed by parties located in South Dakota and Texas. Green Tree Defs.' Mot. Dismiss Br. Exs. H and I. Assuming that ValleCastro has thereby alleged Green Tree's technical violation of the CCAA, she has nevertheless failed to plausibly suggest that any of the defective affidavits constitutes a "threat to litigate." As Green Tree points out, it is not a party to the state court action, nor has ValleCastro alleged that it threatened to instigate a new proceeding. Even the least-sophisticated consumer could not reasonably believe that merely providing factual affidavits in one action constitutes a threat to initiate a new lawsuit or collection action on the same debt. *See Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 275 (D. Conn. 2007). Accordingly, ValleCastro's claims under count two are dismissed with prejudice.

6.  *ValleCastro's Claims under the FDCPA against the Individual Defendants*

ValleCastro's remaining claims under the FDCPA assert that individual employees and agents of Green Tree have violated the statute through their involvement with the state court action.

Courts in this Circuit have been willing to impose individual liability under the FDCPA "where the defendant sought to be held liable personally engaged in the prohibited conduct." *Allison v. Whitman & Meyers, LLC*, No. 13-CV-696-JTC, 2015 WL 860757, at *2 (W.D.N.Y. Feb. 27, 2015) (collecting cases). Moreover, the Second Circuit has observed that "statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA." *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012). For the purposes of this discussion, I will thus assume, without deciding, that each of the individual defendants can be treated as a "debt collector" under the FDCPA by virtue of his or her actions on behalf of a debt collector.

As discussed above, ValleCastro claims that the affidavits submitted by Red Bear and Jowers, and notarized by Ireland constituted violations of the CCAA because of the locations in which they were signed, and therefore also violated section 1692e(5), Compl. ¶ 9.3. For the reasons discussed above, these claims are also dismissed with prejudice.

ValleCastro also makes several claims asserting FDCPA violations on the basis that the individual defendant providing a given statement misrepresented his or her knowledge and / or authority to make said statement. None of these claims is supported by anything more than conclusory allegations. Accordingly, they are disposed of as follows:

- ValleCastro's claims that Jowers falsely implied that she had personal knowledge of the matters asserted, and that she falsely stated that the state court plaintiff had

suffered a financial injury and was entitled to collect on the note, Compl. ¶¶ 11.2(a)–(c), are dismissed with prejudice.

- ValleCastro's claim that Ireland performed a "deceptive" act by notarizing a document while she was also employed as a foreclosure specialist by Green Tree, Compl. ¶¶ 11.2 (d)–(e), is dismissed with prejudice.

- ValleCastro's claim regarding Red Bear's alleged lack of personal knowledge of the information contained in her affidavit, Compl. ¶¶ 11.2 (f), is dismissed with prejudice.

- ValleCastro's claim regarding an allegedly confusing implication by Riordan, Gordon, and Avallone "that a 'mortgagee' authorized notice to be effectuated three and a half years prior," Compl. ¶¶ 11.2(g), is dismissed with prejudice.

- ValleCastro's claim regarding Gordon and Avallone's failure to include excessive authentication on the state court affidavits, which points to no authority indicating such authentication is required, Compl. ¶¶ 11.2 (h), is dismissed with prejudice.

7. *ValleCastro's Claims under CUTPA (Count VI)*

In Count Six, ValleCastro alleges that all defendants violated CUTPA on the same basis as her foregoing allegations regarding the FDCPA.

Because ValleCastro has alleged no viable claims under the FDCPA, her CUTPA claims are also, accordingly, dismissed without prejudice to amendments should ValleCastro adequately alleged some other ground or a viable FDCPA claim.

## IV.   The Motions for Judicial Notice

Federal Rule of Evidence 201 allows a court to take notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned."  A court "must take judicial notice if a party requests it and the court

is supplied with the necessary information."  *Id.* at 201(c).  The Second Circuit has, however,

recognized that judicial notice may be restricted to facts that are relevant to the dispute at hand.

*See Rothstein v. Balboa Ins. Co.*, No. 14-1112, 2014 WL 4179879, at *1 (2d Cir. June 25, 2014)

(citing *United States v. Byrnes*, 644 F.2d 107, 112 (2d Cir.1981)).

A request for judicial notice may be taken "at any stage of the proceeding," and upon a

timely request, the court must allow the parties "to be heard on the propriety of taking judicial

notice and the nature of the fact to be noticed."  *Id.* at 201(d)–(e).  Because a request may be

taken "at any stage of the proceeding," district courts have utilized judicial notice at the motion

to dismiss and summary judgment stages.  *Id.* at 201(f); *Singleton v. N.Y.C.*, 632 F.2d 185, 204

(2d Cir. 1980) (Weinstein, D.J., dissenting); *Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd.*,

508 F. Supp. 1322, 1328 (E.D.N.Y. 1981) (gathering cases); *United States* ex rel. *McLaughlin v.*

*N.Y.*, 356 F. Supp. 988, 990 (E.D.N.Y. 1973).

A.  The Defendants' Motions for Judicial Notice (docs. 52 and 65)

The defendants request that I take notice of the records and pleadings in a foreclosure

action proceeding against ValleCastro in Connecticut Superior Court.  Bendett Defs.' Mot.

Dismiss Br. 2 n.1; Green Tree Reply Br. 1–2; *see generally The Bank of New York as Trustee for*

*the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2005-4 v. Brunilda*

*ValleCastro*, No. HHD-cv-14-6052583-S (Conn. Super. Ct. 2014), *available at*

http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV146052583

S (last visited Sept. 28, 2015).  The Green Tree defendants further request that I take judicial

notice of the mortgage, note, and assignment affiliated with the debt at issue here, as well as

24

correspondence between the defendants and ValleCastro attached to their motion to dismiss. Green Tree Defs.' Mot. Dismiss Br. 2. The plaintiffs made a blanket objection to all exhibits attached to the defendants' motions on the basis of their untrustworthiness and lack of verification by way of affidavits. Pls.' Reply 1.

The fact that a lawsuit has been initiated in a state court within the same territorial jurisdiction as a district court, and the filings and orders in that state court case can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned—here, the electronic docket for the State of Connecticut's Judicial Branch. Similarly, the mortgage, note, and assignment are publicly recorded documents that have been accepted by the state court, and no meaningful objection has been raised as to their authenticity. Finally, as the Green Tree defendants point out, the plaintiffs' complaint is based on the contents of the correspondence attached to the defendants' brief, and the plaintiffs' references to the correspondence are consistent with the exhibits. *Compare* Compl. ¶¶ 7.6–7.8*, with* Green Tree Defs.' Mot. Dismiss Br. Exs. D, E, F. Accordingly, I grant the defendants' motions for judicial notice in all respects (doc. 52 and 65).

B.   The Plaintiffs' Motion for Judicial Notice (doc. 60)

The plaintiffs request that this court take judicial notice of four items: (1) the Supreme Court holding in *Carpenter v. Longan*, 83 U.S. 271 (1872); (2) the Consumer Financial Protection Bureau's provision of form responses to verification requests under 15 U.S.C. § 1692g; (3) the settlement agreement between the U.S. Department of Justice and Bank of America regarding conduct related to the sale of mortgage securities in 2014; and (4) state court felony fraud convictions for embezzlement against Desiree Carson, who notarized the assignment of ValleCastro's mortgage in 2011 (doc. 60). Both sets of defendants object that each

of these items is either clearly irrelevant to the present dispute, or must be demonstrated to be relevant through argument.

I agree with the defendants that the relevance of the first three items clearly has not yet been established such that judicial notice would be appropriate. Carson's state convictions for embezzlement in California, which also arises from a state court proceeding and therefore could likely be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, has similarly not yet been shown to be relevant. Accordingly, the plaintiffs' motion for judicial notice is denied without prejudice to their opportunity to proffer those items as evidence in support of or in opposition to a subsequent dispositive motion or at trial. *Biernacki v. United States*, No. 11-cv-973 (SR), 2012 WL 6100291, at *3 (W.D.N.Y. Dec. 7, 2012).

## V.       Conclusion

The Green Tree and Bendett defendants' motions to dismiss Valle from counts one through six for lack of standing are granted in part, except with respect to his claims regarding insurance under Count Five. The Green Tree defendants' motion to dismiss counts one, two, four and five under the FDCPA are granted with prejudice, and their motion to dismiss count six under CUTPA is granted without prejudice. The Bendett defendants' motion to dismiss counts one, four, and five under the FDCPA is granted with prejudice, and their motion to dismiss counts three under the FDCPA and count six under CUTPA is granted without prejudice. Accordingly, Bendett and all of the individual defendants moving herein are dismissed from the case. Additionally, the defendants' motion for judicial notice is granted, and the plaintiffs' motion for judicial notice is denied.

The plaintiffs must file an amended complaint within 30 days of this ruling. Failure to file within 30 days will result in dismissal with prejudice.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of September.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge